JOHN A. C. GEDDES & wife *vs.* METROPOLITAN RAILROAD
COMPANY.

At the trial of an action by a woman against common carriers of passengers to recover for personal injuries resulting from her falling from their coach, there was evidence tending to show that the driver stopped the coach to receive her as a passenger; that the coach was crowded and all the seats in it were occupied; and that, immediately after she had got in, and when she was standing within the door, she was thrown out of the coach by its violent jerk at starting. *Held*, that there was some evidence in favor of the plaintiff, to go to the jury.

TORT to recover for personal injuries received by the female plaintiff in falling or being thrown from one of the defendants' coaches.

At the trial in the superior court, before *Morton*, J., it appeared that at the time of the accident there had been a snow storm which prevented the defendants, who were common carriers of passengers, from running horse cars, their usual mode of transporting passengers, and they were running coaches on runners, kept for such occasional use.

The female plaintiff testified as follows : " A man hailed the coach, opened the door and waited until I got in. I saw no conductor, no straps. There was no seat for me when I stepped in. I was in but a moment, and did not look round to recognize anybody. First I knew, I was out in the street; fell on my back and side; fell out backwards as quick as I got in. The coach started as soon as I got in, or nearly in; no time to be seated. I knew the conductor and think he was about, as he came to pick me up. I was with child." On cross-examination she further testified : " The seats were all full, and people were standing up inside; space all occupied; as much as ever I could do to get in. The door was open when I got to it and went in. The conductor was not there. Some one closed it from the window. I saw that there was no strap on the inside attached to the door; had not time to lean against the door; and could not step forward, as the coach was filled. It was a covered omnibus. Always have a strap to hold on to; this one had no strap to hold on to. It stooped on bare ground; it is harder starting on bare ground."

Mary Graves testified : " I saw the female plaintiff go in. Should think she had but just got in before she fell out backwards. She had not time to sit down, if there was a seat, before they started horses. I have an impression that the door was open when she went to go in. The conductor was on the box with the driver."

Ambrose R. Adams testified : " The coach stopped, and the female plaintiff got in ; had not time to adjust her position when she was thrown out. There was no strap to the coach ; there was a bar across inside to take hold of. She stepped forward to look for a seat, and, instead of taking hold of the bar, stepped back to lean against the jamb of the door, when the carriage started. The coach stopped as usual, and started as usual. She stepped back to lean ; there was nothing on the door or steps to hold on to ; the door closed behind her, or partially so at least, of itself. She stepped into the coach and then stepped back again ; I should say about one step. The coach had a flat roof ; could hardly stand up in it."

Jacob C. Wentworth testified : " The female plaintiff fell out immediately after getting in ; she had not more than got in ; the starting of the coach threw her out ; I don't remember about the start."

The defendants, at the close of the plaintiffs' evidence, asked the judge to rule that " the female plaintiff had not shown due care on her own part, or such negligence on the part of the defendants as to entitle her to recover, and that no liability was shown on the part of the defendants by this evidence." But the judge refused so to rule.

The defendants called, among their witnesses, Albert Huse, a passenger in the coach at the time of the accident, who testified : " The female plaintiff got into the omnibus. I shut the door after her myself by reaching out my hand and swinging it together. She leaned deliberately back against the door ; there was just room for one to stand when she got in. The conductor was engaged taking fares outside ; the coach stopped on snow ; when the plaintiff struck, she hit on bare ground. There was nothing unusual in the starting of the coach ; I have no

seen a strap used for two years. The strap is used for the pur-
pose of conveying intelligence to the driver, not to hold the door,
or to hold on to."

At the close of the defendants' evidence the female plaintiff,
being recalled as a witness in the plaintiffs' behalf, testified
"that she did not lean nor attempt to lean against the coach."

The defendants requested the judge to instruct the jury as
follows: First, "that the plaintiffs must show affirmatively that
the female plaintiff was in the exercise of due care; and if not,
and her want of due care contributed to the accident, she can-
not recover; that the accident must have been occasioned solely
by negligence on the part of the defendants, she being in no
wise in fault herself; that if she saw, or had an opportunity to
see, that the coach was full, and she could not ride without
standing up in the coach next to the door, where she could not
conveniently stand, or do so with reasonable safety, it was her
duty to wait for the next coach, and it was a want of due care
to enter and attempt to ride in that way; and that if there were
bars across the coach for her to take hold of, and steady herself
by, and she did not do it, but stood without support or leaned
against the door, that would be a want of due care on her part,
and she cannot recover." Second, "that the defendants were
not bound to provide and keep a man at the end of the coach to
prevent persons from falling out; that there was no evidence in
the case tending to show what constitutes in law negligence on
the part of the defendants, and upon the whole evidence no
negligence on the part of the defendants was shown; also that,
upon the evidence, due care was not shown on the part of the
female plaintiff; that if she did as testified to by Adams, she
could not recover, or if as stated by Huse, this would be negli-
gence on her part; that the evidence of the female plaintiff her-
self, taken to be true as given, would not show due care on her
part or entitle her to recover."

The judge instructed the jury "that the burden of proof was
upon the plaintiffs to show that the injury was caused solely by
the negligence of the defendants or their agents, and that the
female plaintiff's own want of due care in no degree contributed

to it;" adopted the first prayer of the defendants for instruc-
tions; further instructed the jury "that by due care was meant
not extreme care, but ordinary care, such care as men of ordi-
nary prudence or such care as the generality of men and women
use under the same circumstances; and that it was for the jury
to determine upon all the evidence and the instructions given
them, whether the plaintiffs had shown that the female plain-
tiff was in the exercise of such care;" and refused to grant
the second prayer of the defendants for instructions. The jury
returned a verdict for the plaintiffs, and the defendants alleged
exceptions. In the bill of exceptions the evidence of both par-
ties, except as to the character and extent of the female plain-
tiff's injuries, was set forth in full, and those portions of it
omitted from this report were substantially reiterations of the
portions above reported.

　*W. Gaston & A. A. Ranney*, for the defendants.

　*T. Willey*, for the plaintiffs.

Ames, J. If the female plaintiff, when she stopped the de-
fendants' omnibus, and undertook to take a place in it as a
passenger, saw, or had an opportunity to see, that there was
absolutely no room for her, and no place in which she could
even stand with reasonable security, it might well be said to be
" a want of due care to enter and attempt to ride in that way."
This was the ruling requested by the defendants, and given by
the court. A person who clings upon a crowded stage-coach, or
street car, and voluntarily takes a position in which his hold is
necessarily precarious and uncertain, has no right to complain
of any accident that is the direct result of the danger to which
he has seen fit to expose himself. But the defendants, on the
other hand, by the act of stopping the carriage at her signal, and
opening the door for her to enter, must be considered, not merely
as giving her an opportunity to judge whether it would be safe
and convenient for her to take passage, but as inviting her to do
so, and assuring her that her passage should be a safe one, at
least so far as depended upon the exercise of reasonable and
ordinary care, diligence and skill on their part, in driving and
managing their horses. The fact that the omnibus was already

crowded and overloaded can in no case be permitted to lower the standard of diligence and care required of them for the comfort and safety of the passengers. On the contrary, if, when the omnibus is already in that condition, they assume the responsibility of admitting an additional passenger, their contract with him, or rather their obligation to him, is, that they will furnish such increased and more watchful and solicitous care, skill and attention as the crowded condition of the vehicle requires. What constitutes ordinary and reasonable care of course varies with the circumstances of each case. It must be such as is required by the exigency of the case, and such as is necessary to guard against all dangers which can fairly be said to be probable, or such as reasonable men ought to anticipate. If a carriage heavily loaded requires more skill and care in its management than one in a different condition, the standard of the skill and care which they were bound to furnish would be higher in the same proportion.

She, on her part, if she saw and knew the condition of things when she got into the omnibus, must be understood to have voluntarily assumed the entire risk of all inconveniences and dangers resulting directly from its crowded and overloaded condition, and from the necessity of performing her journey in a standing posture. But she had a right to hold the defendants responsible for all injuries produced by, or resulting directly from, their own carelessness and unskilfulness. It is impossible to say, on examination of the report, that there is no evidence of any such carelessness and unskilfulness. On the contrary there is evidence upon which the jury may have found that, at the moment of her getting into the carriage, it was started with a sudden and violent jerk before she had time to balance herself or do anything whatever for her own security, and they may have thought this abrupt start, under the circumstances, was owing to carelessness or mismanagement.

The instructions given to the jury pointed out with entire distinctness the question which they were to consider, were carefully guarded and appropriate to the case, and there was no error on the part of the court that renders it necessary to disturb the verdict.                    *Exceptions overruled.*